## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. _____

MARISELA MATA and BIBIANA
HERNANDEZ, as individuals and
on behalf of all others similarly situated,

      Plaintiffs,

v.

TRIVAGO GmbH, a German limited
liability company,

      Defendant.

_____/

## CLASS ACTION COMPLAINT FOR DAMAGES

Antonio Mata y Alvarez built the Hotel San Carlos in the historic center of Cienfuegos, Cuba in 1925. He and his son ran it and built up its good will and fame until Fidel Castro seized power and established a communist government in Cuba, which confiscated the San Carlos from the Mata family. The communist Cuban government—and more recently, the Meliá hotel chain—has used and benefitted from the San Carlos for decades without paying the Mata family any compensation. Trivago GmbH ("Trivago"), a subsidiary of Expedia, Inc., also has benefitted from the San Carlos—and scores of properties like it—by providing booking services for those properties online and receiving compensation in the form of commissions, fees, and other remuneration for those services. The Matas now sue to recover for defendant's unlawful trafficking in their property and for just compensation for themselves and a class of similarly situated persons.

## THE ACTION

1.       Marisela Mata and Bibiana Hernandez (the "Mata Heirs"), on behalf of themselves and a class of similarly situated persons, sue defendant Trivago, and have given 30-day notice of intent to sue the other Expedia Entities, and the Booking.com Entities[1] under the Cuban Liberty and Democratic Solidarity Act, 22 U.S.C. § 6021, *et seq.* (the "LIBERTAD Act"), for unlawful trafficking in their confiscated property in Cuba.

---

[1] Under 22 U.S.C. § 6082(a)(3), the Mata Heirs have, contemporaneously with this filing, given notice to Expedia, Inc., together with its affiliates Hotels.com L.P., Hotels.com GP, LLC, Orbitz, LLC, Travelocity.com, LP (collectively, including defendant Trivago, the "Expedia Entities"), as well as Booking Holdings Inc., and Booking.com B.V. (collectively, the "Booking Entities"), of their intent to add them as defendants to this lawsuit if they do not promptly compensate the Mata Heirs and the class for the unlawful trafficking of their property.

**THE PARTIES**

2.      Marisela Mata is a natural person and United States citizen who resides in Miami, Florida.

3.      Bibiana Hernandez is a natural person and United States citizen who resides in Miami, Florida.

4.      Defendant Trivago GmbH, an affiliate of Expedia, Inc., is a German limited liability company headquartered in Düsseldorf, Germany, with offices in New York, New York.

**RELEVANT NON-PARTIES**

5.      Corporación de Comercio y Turismo Internacional Cubanacán S.A. ("Cubanacan") is a state-run company incorporated in Cuba which owns various hotel properties in Cuba, and which, together with several foreign hotel chains, operates those hotels, which are available to be booked on websites operated by defendant.

6.      Grupo de Turismo Gaviota S.A. ("Gaviota") is a state-run company incorporated in Cuba which owns various hotel properties in Cuba, and which, together with several foreign hotel chains, operates those hotels, which are available to be booked on websites operated by defendant.

7.      Grupo Hotelero Gran Caribe ("Gran Caribe") is a state-run company incorporated in Cuba which owns various hotel properties in Cuba, and which, together with several foreign hotel chains, operates those hotels, which are available to be booked on websites operated by defendant.

8.      Cubanacan, Gaviota, and Gran Caribe will be referred to in this complaint as the "Cuban Entities."

9.      Meliá Hotels International S.A. ("Meliá"), operates, directly or indirectly, at least 34 hotels in Cuba.

10.     Iberostar Hotels and Resorts ("Iberostar") operates, directly or indirectly, at least 20 hotels in Cuba.

11.     Blue Diamond Hotels & Resorts ("Blue Diamond") operates, directly or indirectly, at least 18 hotels in Cuba.

12.     Be Live Hotels ("Be Live") operates, directly or indirectly, at least 8 hotels in Cuba.

13.     Barceló Hotel Group ("Barceló") operates, directly or indirectly, at least 3 hotels in Cuba.

14.     Meliá, Iberostar, Blue Diamond, Be Live, and Barceló will be referred to collectively in this complaint as the "Hotel Operators."

15.     In addition to the Hotel Operators listed above, other hotel chains operate at least 13 other hotels in Cuba.

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction of this action under 28 U.S.C. § 1331 because this action arises under the LIBERTAD Act (22 U.S.C. § 6082), and the amount in controversy exceeds $50,000, excluding interest, costs, and attorneys' fees.

17.     This Court has personal jurisdiction over Trivago under Fla. Stat. §§ 48.193(1)(a)(1), 48.193(1)(a)(6), and 48.193(2).

18.     Venue is proper in this District under 28 U.S.C. § 1391(a)(1), because Trivago is deemed to be a resident of the Southern District of Florida under 28 U.S.C. §§ 1391(c)(2) and (d).

## THE LIBERTAD ACT

19.     In 1996, in response to the communist Cuban government's murder of four civilian pilots performing humanitarian work with the Cuban-American group Brothers to the Rescue, Congress passed the LIBERTAD Act to strengthen sanctions against the communist Cuban government and deter the exploitation of wrongfully confiscated property in Cuba belonging to U.S. nationals.

20.     Title III of the LIBERTAD Act provides U.S. nationals whose property in Cuba had been confiscated by the communist Cuban government with a right of action against those who traffic in that property. 22 U.S.C. §§ 6081-6085.

21.     The LIBERTAD Act defines a person who "traffics" in confiscated property, *inter alia*, as one who:

knowingly and intentionally—–

    (i)     Sells, transfers, distributes, dispenses, brokers, manages, or otherwise disposes of confiscated property, or purchases, leases, receives possesses, obtains control of, manages, uses, or otherwise acquires or holds an interest in confiscated property,

    (ii)    engages in a commercial activity, using or otherwise benefiting from confiscated property, or

    (iii)   causes, directs, participates in, or profits from, trafficking . . . by another person, or otherwise engages in trafficking through another person

without the authorization of any United States national who holds a claim to the property.

22 U.S.C. § 6023(13).

22.     Since the LIBERTAD Act's passage more than twenty years ago, successive United States Presidents suspended the right of action provided by Title III of the Act. On May 2, 2019, that suspension was not renewed. The Mata Heirs and the class members are now permitted to file suit under the LIBERTAD Act.

## FACTUAL ALLEGATIONS

### A.     *The San Carlos*

23.     In June 1925, Antonio Mata y Alvarez built and established the Hotel San Carlos (the "San Carlos") located at Calle de San Carlos, No. 143, Cienfuegos, Cuba. He operated the San Carlos for nearly 32 years, building its reputation so that it was regarded as the leading hotel in the historic center of Cienfuegos.

24.     On January 4, 1959, Antonio Mata y Alvarez died intestate in Cuba. Ownership of the San Carlos passed to his only heir, his son, Antonio Alberto Lazaro Mata.

25.     On December 4, 1962, the communist Cuban government confiscated the San Carlos from Antonio Alberto Lazaro Mata.

26.     Around 1984, the communist Cuban government abandoned and closed the San Carlos, which fell into disrepair.

27.     In 2005, the Cuban government began renovating the San Carlos. That work continued for more than a decade. The San Carlos was re-opened on January 14, 2018, as the Meliá San Carlos.

### B.     *Succession Rights to the San Carlos*

28.     Antonio Alberto Lazaro Mata died on August 25, 1979, in Cienfuegos, Cuba, and was survived by his wife and two children, Antonio Barbaro Mata and Marisela Mata. Upon his death, ownership of the San Carlos passed by operation of Cuban law to Antonio Barbaro Mata and Marisela Mata, in equal parts.

29.     Antonio Barbaro Mata and Ms. Hernandez were married in Miami in 1985.

30.     Antonio Barbaro Mata passed away intestate on August 16, 2000, and his half ownership of the San Carlos passed by operation of Florida law to Ms. Hernandez.

31.     As of the time of filing this lawsuit, the Mata Heirs—Ms. Mata and Ms. Hernandez—are the rightful owners of the San Carlos, which is being trafficked by Gran Caribe, Meliá, and the Booking and Expedia Entities, including defendant Trivago, under the name Meliá San Carlos.

**C.     Defendant, together with the Cuban Entities and the Hotel Operators, Has Trafficked the Hotel Without Compensating the Mata Heirs**

32.     Neither the communist Cuban government, the Cuban Entities, the Hotel Operators, nor Trivago, has ever paid—and the Mata Heirs have never received—any compensation whatsoever for the trafficking of the San Carlos.

33.     The Mata Heirs were not eligible to file a claim with the Foreign Claims Settlement Commission under Title V of the International Claims Settlement Act of 1949 (22 U.S.C. § 1643 *et seq.*), because they were not U.S. citizens at the time the property was confiscated.

34.     The San Carlos has not been the subject of a certified claim under Title V of the International Claims Settlement Act of 1949 (22 U.S.C. § 1643 *et seq.*).

**D.     The Joint Venture**

35.     The Cuban Entities and the Hotel Operators operate a number of joint ventures by which they receive, possess, obtain control of, manage, use, or otherwise acquire or hold an interest in confiscated property and engage in commercial activity involving the use of or otherwise benefitting from confiscated property. One of these properties is the iconic San Carlos.

36.     Apart from the real property itself, Trivago, Gran Caribe, and Meliá also trafficked in the San Carlos' name, its good will, and the legacy built up by the Mata family.

37.     To attract guests, defendant Trivago, Gran Caribe, and Meliá traffic not only the San Carlos' physical structure, but also its trade name, goodwill, legacy, and storied history, all

of which are the result of the Mata family's efforts over decades. For example, Meliá's websites extoll the facts that the San Carlos was "[o]pened in 1925" and served as "the city's main hotel throughout the first half of the 20th century."[2]

### E.    The Expedia Entities

38.    Expedia, Inc. ("Expedia"), owns the travel booking brand expedia.com and is the corporate parent of many other travel booking brands, including defendant Trivago (and Hotels.com L.P., Hotels.com GP, LLC, Orbitz, LLC, and Travelocity.com, LP). Expedia's corporate filings disclose 21 subsidiaries or affiliates, through which it maintains more than 200 travel booking sites in more than 70 countries, and through which it offers more than 1 million properties for rent.

---

[2] *See* http://www.meliacuba.com/cuba-hotels/hotel-melia-sancarlos.



https://www.expediagroup.com/about/

     39.    According to Expedia's most recent 10-K, defendant Trivago and the other

Expedia Entities "make travel products and services available both on a stand-alone and package

basis, primarily through the following business models: the merchant model, the agency model

and the advertising model." Expedia, Inc. Annual Report (Form 10-K) (Feb. 14, 2018) at 5.

> Under the merchant model, we facilitate the booking of hotel rooms, airline seats, car rentals and destination services from our travel suppliers and we are the merchant of record for such bookings. The majority of our merchant transactions relate to hotel bookings. Under the agency model, we facilitate travel bookings and act as the agent in the transaction, passing reservations booked by the traveler to the relevant travel provider. We receive commissions or ticketing fees from the travel supplier and/or traveler.

*          *          *

> Under the advertising model, we offer travel and non-travel advertisers access to a potential source of incremental traffic and transactions through our various media and advertising offerings on trivago and our transaction-based websites.

*Id.* at 5-6.

40.     When defendant Trivago and the other Expedia Entities operate under the

merchant model, customers "pay [defendant Trivago and the other Expedia Entities] for

merchant hotel transactions prior to departing on their trip, generally when they book the

reservation." *Id.* at F-10. As to how defendant Trivago and the other Expedia Entities profit from

this model, they "generally contract in advance with lodging providers to obtain access to rooms

at negotiated rates" then re-sell the rooms to its customers at a profit. *Id.* at F-11.

41.     When defendant Trivago and the other Expedia Entities operate under the agency

model, they "act as the agent in the transaction, passing reservations booked by the traveler to the

relevant travel provider" and "receive commissions or ticketing fees from the travel supplier

and/or traveler." *Id.* at F-10.

42.     Defendant Trivago and the Expedia Entities all provide online booking services

for hotels in Cuba, including those operated by the Hotel Operators and others. Defendant

Trivago offers bookings at a total of 125 properties in Cuba, including 16 Blue Diamond

properties, 4 Iberostar properties, 32 Meliá properties, 3 Be Live properties, and 3 Barceló

properties. One of the offered Meliá properties is the San Carlos:



## CLASS REPRESENTATION ALLEGATIONS

43.     Under Fed. R. Civ. P. 23, the Mata Heirs bring this suit and seek class

certification of the claim alleged here, and a damages judgment against defendant for themselves

and the class members.

44.     The class is defined as follows and consists of:

All U.S. nationals (as defined at 22 U.S.C. § 6023(15)) who own property (as defined at 22 U.S.C. § 6023(12)) in Cuba that was expropriated by the government of Cuba prior to March 12, 1996, and has been trafficked by Trivago without prior authorization of, or absent compensation to, such U.S. nationals, where such U.S. national was not eligible to file a claim with the Foreign Claims Settlement Commission under Title V of the International Claims Settlement Act of 1949 (22 U.S.C. § 1643 et seq.), and no certified claim to the property exists.

This class definition excludes (a) defendant, its officers, directors, management, employees, parents, subsidiaries, and affiliates; and (b) any judges or justices involved in this action and any members of their immediate families.

**A.     *Federal Rule of Civil Procedure 23(a)***

45.     Fed. R. Civ. P. 23(a) provides for class certification where the representative

plaintiffs demonstrate that:

1.     the class is so numerous that joinder of all members is impracticable;

2.     there are questions of law or fact common to the class;

3.     their representative claims or defenses are typical of the claims or defenses of the class; and

4.     they will fairly and adequately protect the interests of the class.

*(1)     Numerosity*

46.     On information and belief, the class consists of hundreds of persons. Defendant

Trivago and the other Expedia Entities offer thousands of rooms and dozens of hotels in Cuba for

booking, all of which (or the property on which those hotels sit) were confiscated from their

rightful owners by the communist Cuban government. Defendant Trivago's website offers

booking for rooms in 48 such hotels run by Melia (32), Blue Diamond (16), Iberostar (4), Be Live (3) and Barcelo (3), which renders joinder of the original owners (and their heirs) impracticable.

       *(2)*     *Commonality*

47.    The Mata Heirs and the class have claims that raise common questions of law or fact.

48.    This is an action in which the Mata Heirs and the class members assert claims alleging the same theory of recovery, namely, that they are entitled to damages from the defendant for its wrongful trafficking of their property.

49.    The Mata Heirs' and class members' claims arise from the same practice or course of conduct: defendant's trafficking of confiscated properties used in the hospitality and tourism industry for its own economic gain.

50.    The Mata Heirs' and class members' damages were caused by the same practice or course of conduct: defendant's unlawful trafficking in their property without prior authorization or compensation to the rightful owners.

51.    The Mata Heirs and class members' claims raise common questions of law or fact, including, but not limited to, whether:

    a.    The communist Cuban government nationalized, expropriated, or seized property without providing the owners with adequate or effective compensation;

    b.    The confiscation of property occurred before March 12, 1996;

    c.    Defendant trafficked in that confiscated property; and

    d.    Defendant knew or had reason to know that the trafficked property had been confiscated.

*(3)     Typicality*

52.     The Mata Heirs' claims are typical of class member claims because they are based on the same legal theory, arise from a similar core set of facts, and are not subject to any unique defenses. Members of the class have sustained, and will continue to sustain, damages in the same manner as the Mata Heirs as a result of defendant's conduct.

*(4)     Adequacy of Representation*

53.     The Mata Heirs and their counsel will fairly and adequately protect and represent the interest of the class members.

54.     The Mata Heirs are members of the class defined above. As representative plaintiffs, they are committed to the active and vigorous prosecution of this action and have engaged competent counsel experienced in litigation of this nature, who possess the resources and commitment to vigorously prosecute this case to a successful resolution.

55.     There is no hostility of interests between the Mata Heirs and other class members. The Mata Heirs have no claims that are antagonistic to the claims of other class members, and reasonably anticipate no difficulty in the management of this litigation as a class action.

**B.     *Federal Rule of Civil Procedure 23(b)***

56.     This class action is maintainable under Rule 23(b)(3).

*(1)     Predominance*

57.     In this case, common liability issues of law and fact predominate over any hypothetical or potential individualized issues, because the Mata Heirs' and class members' claims arise from a common nucleus of operative fact and share, among other things, the common issues of law and fact set forth above. The predominant common issue in this action is whether defendants knew, or had reason to know, that they trafficked in confiscated property.

*(2)    Superiority*

58.    A class action is superior to other available methods for the fair and efficient adjudication of this litigation because it is the most manageable and efficient way to resolve the individual claims of each class member.

59.    Specifically, a class action will provide class members with what may be their only economically viable remedy. Moreover, there are no known class members who are interested in individually controlling the prosecution of separate actions. In addition, a class action will concentrate all litigation in one forum, which will conserve judicial and party resources with no unusual manageability problems.

**C.    *National Issues Class under Fed. R. Civ. P. 23(c)(4)***

60.    In the alternative, the Mata Heirs seek to bring and maintain a national issues class under Fed. R. Civ. P. 23(c)(4).

61.    Rule 23(c)(4) provides that an action may be brought or maintained as a class action with respect to particular issues when doing so would materially advance the litigation as a whole.

62.    In order to materially advance this litigation, the Mata Heirs bring this action on behalf of themselves and the Class Members to resolve several critical, class-wide issues, including whether:

    a.    defendants entered into a joint venture or other contractual arrangement that arranged for the use of confiscated property;

    b.    defendants engaged in a commercial activity using or otherwise benefitting from the use of confiscated property;

    c.    defendants sold, transferred, managed, used, or acquired an interest in confiscated property; and

    d.    defendants knew or had reason to know that the property they used or benefitted from was confiscated.

63.     The Issues Class is properly brought and should be maintained as a class action

under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality,

typicality, and adequacy because:

     a.    Numerosity: Individual joinder of the Issues class members would be
wholly impracticable. There are hundreds of persons throughout the
United States whose property was confiscated by the communist Cuban
government and in which defendants traffic. Thus, the numerosity element
for class certification is satisfied;

     b.    Commonality: Questions of law and fact are common to the Issues class
members' claims. As this is an issues class under Rule 23(c)(4), there are,
by definition, common questions of law applicable to all class members'
claims:

     c.    Typicality: The Mata Heirs' claims are typical of Issues class members'
claims because all the claims arise from the same course of conduct by
defendants, i.e., defendants' trafficking in confiscated property. Therefore,
the Mata Heirs' claims are typical of the issues class members' claims;

     d.    Adequacy: The Mata Heirs will fairly and adequately represent and protect
the interests of the Issues class members. The Mata Heirs' interest in
vindicating their claims is shared with all Issues class members, and there
are no conflicts between the named plaintiffs and putative Issues class
members. Further, Plaintiffs are represented by counsel who are
competent and experienced in class action litigation, have no conflicts, and

64.     This issues class also is maintainable under Rule 23(b)(3) because common

liability issues of law and fact predominate over any hypothetical or potential individualized

issues. The Mata Heirs' and issues class members' claims arise from a common nucleus of

operative fact and share, among other things, the common issues of law and fact set forth above.

The predominant common issue in this action is whether defendants knew, or had reason to

know, that they trafficked in confiscated property. A class action is superior to other available

methods for the fair and efficient adjudication of this overarching issue, and this litigation,

because class treatment affords the most manageable and efficient way to resolve the individual

claims of each Issues class member. Class treatment will provide Issues class members with what

may be their only economically viable remedy. Moreover, there are no known Issues class

members who are interested in individually controlling the prosecution of separate actions. In

addition, a class action will concentrate all litigation in one forum, which will conserve judicial

and party resources with no unusual manageability problems.

## CAUSE OF ACTION

### COUNT I
### Private Right of Action Under 22 U.S.C. § 6082(a)(1)

65.     The Mata Heirs incorporate by reference paragraphs 1 to 64 as if fully set forth

here.

66.     This claim is brought under Title III of the LIBERTAD Act, 22 U.S.C. § 6082.

67.     Defendant is a "person" as defined by 22 U.S.C. § 6023(11).

68.     The Mata Heirs and the class members had their property confiscated by the

communist Cuban government.

69.     Defendant has trafficked in Property as defined by 22 U.S.C. § 6023(12),

specifically the San Carlos and other hotels in Cuba, by offering rooms in those hotels on its

website, for economic gain, from which defendant has benefitted.

70.     Defendant has conducted this trafficking "without the authorization of any United

States national who holds a claim to the property" (22 U.S.C. § 6023(13)), in violation of Title

III of the LIBERTAD Act.

71.     Accordingly, the Mata Heirs and class members are entitled to damages to be

determined under 22 U.S.C. § 6082(a)(1)(A)(i), together with attorneys' fees and costs under 22

U.S.C. § 6082(a)(1)(A)(ii).

## PRAYER FOR RELIEF

WHEREFORE, the Mata Heirs, individually and on behalf of the class members, demand

the following relief:

a)   A finding that this action satisfies the prerequisites for maintenance of a class action under Federal Rule of Civil Procedure 23(a) and (b)(3), and certification of the class defined above;

b)   Designation of the Mata Heirs as representatives of the class and their undersigned counsel as class counsel; and

c)   A judgment against defendant that:

     i.   Awards actual damages in an amount to be determined under 22 U.S.C. § 6082(a)(1)(A)(i);

     ii.   Awards reasonable attorneys' fees and costs incurred in this action under 22 U.S.C. § 6082(a)(1)(A)(ii);

     iii.   Awards appropriate post-judgment interest; and

     iv.   Grants such other relief as the Court deems just and proper.

Dated: June 18, 2019

Respectfully submitted,

**RIVERO MESTRE LLP**
2525 Ponce de Leon Blvd., Suite 1000
Coral Gables, Florida 33134
Telephone: (305) 445-2500
Facsimile: (305) 445-2505
E-mail: arivero@riveromestre.com
E-mail: jmestre@riveromestre.com
E-mail: arolnick@riveromestre.com
E-mail: crodriguez@riveromestre.com

By:

ANDRÉS RIVERO
Florida Bar No. 613819
JORGE A. MESTRE
Florida Bar No. 88145
ALAN H. ROLNICK
Florida Bar No. 715085

CARLOS A. RODRIGUEZ
Florida Bar No. 0091616

**MANUEL VAZQUEZ, P.A.**
2332 Galiano St., Second Floor
Coral Gables, Florida 33134
Telephone: (305) 445-2344
Facsimile: (305) 445-4404
E-mail: mvaz@mvazlaw.com

By: _____
MANUEL VAZQUEZ
Florida Bar No. 132826