**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

Case No. 19-cv-22529-FAM

MARICELA MATA, BIBIANA
HERNANDEZ, MARIO ECHEVARRIA,
ESTHER SANCHEZ, CONSUELO CUEVAS,
CARMEN FLORIDO, MARGARITA
PERKINS, ANA M. PEREZ PERKINS,
ELENA SUSY PEREZ PERKINS, MARIA
DEL CARMEN PERKINS, RICARDO
PERKINS, PAUL PERKINS, BILL PERKINS,
ESTHER PERKINS, LUIS A. PEREZ
PERKINS, PATRICIA A. PEREZ PERKINS,
SILVIA MILIAN, SANTIAGO D. MILIAN,
PATRICIA A. MILIAN, EDWARD G.
MILIAN, SUSAN M. BLACKMON,
CRISTINA M. GANZ, ROSA MARIA
FERNANDEZ MILIAN, INGRID
FERNANDEZ MILIAN, JAIME FERNANDEZ
MILIAN, ALEX FERNANDEZ MILIAN,
VIVIAN VIURRUN FARRELL, BERTHA
EUGENIA BUSTAMANTE, RAOUL G.
CANTERO, ANUKA G. CANTERO, MARIO
G. CANTERO, EUGENIO CANTERO,
ADRIANA CANTERO,  MARIA DE
LOURDES CANTERO, JOSE RAMON
LÓPEZ REGUEIRO, EVELIO ANGULO
RAMOS, SILVIA ANGULO RAMOS, YOAN
ARTURO ANGULO LEDON, and MARTHA
L. GARCIA ANGULO, as individuals and
on behalf of all others similarly situated,[1]

v.

MELIA HOTELS INTERNATIONAL,
S.A., MELIA HOTELS USA, LLC.,
EXPEDIA, INC., TRIVAGO GmbH,
HOTELS.COM L.P., HOTELS.COM GP,

---

[1] This complaint names more persons as plaintiffs than plaintiffs intend to propose as Class
representatives. Plaintiffs did this to protect their individual claims, because Title III of the
Libertad Act could be suspended before certification of the Class, which could raise unique
procedural issues. A limited number of named plaintiffs intend to petition the Court to move for
Class certification as putative Class representatives.

ORBITZ, LLC, TRAVELOCITY.COM, LP,
BOOKING.COM B.V., BOOKING
HOLDINGS INC., GRUPO HOTELERO
GRAN CARIBE, CORPORACIÓN DE
COMERCIO Y TURISMO
INTERNACIONAL CUBANACÁN S.A.,
GRUPO DE TURISMO GAVIOTA S.A.,
RAÚL DOE 1-5, and MARIELA ROE 1-5,

     Defendants.
_____/

**AMENDED CLASS ACTION COMPLAINT FOR DAMAGES**

On January 1, 1959, Fidel Castro and his fellow revolutionaries overthrew Fulgencio Batista's government and established a communist government in Cuba. The communist Cuban government then methodically stole all Cuban properties and private businesses from their rightful owners and transferred them to the state through systematic and massive property confiscations. The communist Cuban government stole properties from the Mata Family,[2] the Vilaboy Family,[3] the Cantero Family,[4] and the Angulo Cuevas Family,[5] among others. All four families (collectively the "Owners") owned significant properties. The Mata Family owned a renowned hotel, the San Carlos, in Cienfuegos, which had been in operation since 1928. The Vilaboy Family, together with a partner, built another landmark hotel in Cienfuegos, the Jagua. The Cantero Family owned a seven-mile-long strip of land on the famed Varadero beach. And the Angulo Cuevas Family owned the island of Cayo Coco. For nearly six decades since those confiscations, the communist Cuban government—and more recently, foreign and domestic

---

[2] Plaintiffs Maricela Mata and Bibiana Hernandez (the "Mata Heirs") are heirs to the San Carlos.

[3] Plaintiff Jose Ramon López Regueiro (the "Vilaboy Heir") is an heir to the Hotel Jagua.

[4] Plaintiffs Margarita Perkins, Ana M. Perez Perkins, Elena Susy Perez Perkins, Maria Del Carmen Perkins, Ricardo Perkins, Paul Perkins, Bill Perkins, Luis A. Perez Perkins, Patricia A. Perez Perkins, Silvia Milian, Santiago D. Milian, Patricia A. Milian, Edward G. Milian, Susan M. Blackmon, Cristina M. Ganz, Rosa Maria Fernandez Milian, Ingrid Fernandez Milian, Jaime Fernandez Milian, Alex Fernandez Milian, Vivian Viurrun Farrell, Bertha Eugenia Bustamante, Raoul G. Cantero, Anuka G. Cantero, Mario G. Cantero, Eugenio Cantero, Adriana Cantero, Esther Perkins, and Maria De Lourdes Cantero (the "Cantero Heirs") are heirs to the Hicacos Hotels.

[5] Plaintiffs Mario Echevarria, Esther Sanchez, Consuelo Cuevas, Carmen Florido, Evelio Angulo Ramos, Silvia Angulo Ramos, Yoan Arturo Angulo Ledon, and Martha L. Garcia Angulo (the "Angulo Cuevas Heirs") are heirs to Cayo Coco.

companies, including Meliá,[6] Expedia, and Booking.com (including their affiliates)—have used, trafficked in, and benefitted from these confiscated properties without permission from, or compensation to, the properties' rightful owners.

Thus, the Owners, on behalf of themselves and a class of similarly situated persons, sue the defendants under the Cuban Liberty and Democratic Solidarity Act, 22 U.S.C. § 6021, *et seq.* (the "LIBERTAD Act") for unlawful trafficking in their confiscated properties in Cuba.

## THE PARTIES

1.      The following are United States citizens who reside in Miami, Florida:

    a.      Maricela Mata;

    b.      Bibiana Hernandez;

    c.      Mario Echevarria;

    d.      Esther Sanchez;

    e.      Consuelo Cuevas;

    f.      Carmen Florido;

    g.      Evelio Angulo Ramos;

    h.      Silvia Angulo Ramos;

    i.      Yoan Arturo Angulo Ledon;

    j.      Martha L. Garcia Angulo;

    k.      Margarita Perkins;

    l.      Ana M. Perez Perkins;

    m.      Elena Susy Perez Perkins;

    n.      Maria Del Carmen Perkins;

---

[6] Together, Meliá Hotels International, S.A. ("Meliá International") and Meliá Hotels USA, LLC ("Meliá USA") will be referred to here as "Meliá."

      o.      Ricardo Perkins;

      p.      Paul Perkins;

      q.      Bill Perkins;

      r.      Esther Perkins;

      s.      Luis A. Perez Perkins;

      t.      Santiago D. Milian;

      u.      Ingrid Fernandez Milian;

      v.      Bertha Eugenia Bustamante;

      w.      Raoul G. Cantero;

      x.      Anuka G. Cantero;

      y.      Mario G. Cantero;

      z.      Maria De Lourdes Cantero; and

      aa.     Jose Ramon López Regueiro.

2.     Vivian Viurrun Farrell is a United States citizen who resides in Denver, Colorado.

3.     Jaime Fernandez Milian, Rosa Maria Fernandez Milian, Alex Fernandez Milian, and Patricia A. Perez Perkins are United States citizens who reside in San Juan, Puerto Rico.

4.     Adriana Cantero is a United States citizen who resides in Edgewater, Maryland.

5.     Eugenio Cantero is a United States citizen who resides in Gaithersburg, Maryland.

6.     Edward G. Milian is a United States citizen who resides in New York, New York.

7.     Silvia Milian is a United States citizen who resides in Coral Springs, Florida.

8.     Patricia A. Milian is United States citizens who resides in Delray Beach, Florida.

9.     Susan M. Blackmon and Cristina M. Ganz are United States citizens who reside in Deerfield Beach, Florida.

10.     Defendant Meliá International is a Spanish corporation with a principal place of business in Palma de Mallorca, Spain.

11.     Defendant Meliá USA is a Delaware limited liability company with a principal address in Miami, Florida.

12.     Defendant Expedia, Inc. ("Expedia") is a Delaware corporation with its principal place of business in Bellevue, Washington.

13.     Defendant Hotels.com L.P., an affiliate of Expedia, is a Texas limited partnership with headquarters in Dallas, Texas.

14.     Defendant Hotels.com GP, LLC, an affiliate of Expedia, is a Texas limited liability company with its headquarters in Bellevue Washington. Hotels.com GP, LLC is the general partner of Hotels.com L.P.

15.     Defendant Orbitz, LLC ("Orbitz"), an affiliate of Expedia, is a Delaware limited liability company with its headquarters in Chicago, Illinois.

16.     Defendant Trivago GmbH ("Trivago"), an affiliate of Expedia, is a German limited liability company headquartered in Düsseldorf, Germany, with offices in New York, New York.

17.     Defendant Travelocity.com LP ("Travelocity"), an affiliate of Expedia, is a Delaware limited partnership with its principal place of business in Southlake, Texas.[7]

18.     Defendant Booking Holdings Inc. ("Booking Holdings") is a Delaware corporation with its principal place of business in Norwalk, Connecticut.

---

[7] Defendants Expedia, Hotels.com L.P., Hotels.com GP, LLC, Orbitz, Trivago, and Travelocity will be collectively referred to as the "Expedia Entities."

19.     Defendant Booking.com B.V. ("Booking.com") is a Dutch limited liability company based in Amsterdam, the Netherlands, with its principal place of business in Amsterdam. Booking.com B.V. owns and operates Booking.com.[8]

20.     Defendant Gran Caribe is a *sociedad anónima* incorporated in Cuba, with its principal place of business at 7ma. Avenida No. 4210 entre 42 y 44, Miramar, Playa, La Habana, Cuba. Gran Caribe is an agency or instrumentality of the government of Cuba.

21.     Defendant Cubanacán is a *sociedad anónima* incorporated in Cuba, with its principal place of business at Calle 23 No. 156 entre N y O, Vedado, Plaza de la Revolución, La Habana, Cuba. Cubanacán is an agency or instrumentality of the government of Cuba.

22.     Defendant Gaviota is a *sociedad anónima* incorporated in Cuba, with its principal place of business at Edificio La Marina, 3er.Piso. Ave del Puerto No. 102 entre Justiz y Obrapía, La Habana, Cuba. Gaviota is an agency or instrumentality of the government of Cuba.

23.     Raúl Does 1-5 and Mariela Does 1-5 are as-yet-unknown persons, including members of the Cuban government who, on information and belief, are associated with, and benefit from, the trafficking of confiscated property stolen from the Owners and Class Members.

---

[8] Together, Booking Holdings Inc. and Booking.com B.V. will be referred to here as the "Booking.com Entities."

## JURISDICTION AND VENUE

24.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the LIBERTAD Act (22 U.S.C. § 6082) and the amount in controversy exceeds $50,000, excluding interest, costs, and attorneys' fees.

25.      The Court has personal jurisdiction over the Expedia and Booking.com Entities and Meliá under Fla. Stat. §§ 48.193(1)(a)(1) and (6), because they maintain and carry on continuous and systematic contacts with Florida, regularly transact business within Florida, regularly avail themselves of the benefits of their presence in Florida, and caused injury within Florida by committing acts outside of Florida while engaging in solicitation within Florida.

26.     This Court has personal jurisdiction over defendants Gran Caribe, Cubanacán, and Gaviota under 28 U.S.C. § 1330 once service is made under 28 U.S.C. § 1608 because Gran Caribe, Cubanacán, and Gaviota are a foreign state as defined by 28 U.S.C. § 1603.

27.     The Court has personal jurisdiction over Raúl Does 1-5 and Mariela Does 1-5 under Fed. R. Civ. P. 4(k).

28.     Venue is proper in this District under 28 U.S.C. § 1391(b)(3).

## THE LIBERTAD ACT

29.     In 1996, in response to the communist Cuban government's shootdown and murder of four civilian pilots performing humanitarian work with the Cuban-American group Brothers to the Rescue, Congress passed the LIBERTAD Act to strengthen sanctions against the communist Cuban government and deter the exploitation of wrongfully confiscated property in Cuba belonging to U.S. nationals.

30.     Title III of the LIBERTAD Act provides U.S. nationals whose property in Cuba had been confiscated by the communist Cuban government with a right of action against those who traffic, and benefit from trafficking, in that property. 22 U.S.C. §§ 6081-6085.

31.     Since the LIBERTAD Act's enactment more than twenty years ago, successive Presidents of the United States suspended the right of action provided by Title III. As of May 2, 2019, the suspension was not renewed. The Owners and Class Members now have the right to file suit under the LIBERTAD Act.

## FACTUAL ALLEGATIONS

A.     *The Properties*

*The San Carlos*

32.     In June 1928, Antonio Mata y Alvarez built and established the Hotel San Carlos located at Calle de San Carlos, No. 143, Cienfuegos, Cuba. He operated the San Carlos for nearly 32 years, building its reputation, such that it was regarded as the leading hotel in the historic center of Cienfuegos.

33.     On January 4, 1959, Antonio Mata y Alvarez died intestate in Cuba. Ownership of the San Carlos passed to his only heir, his son, Antonio Alberto Lazaro Mata.

34.     On December 4, 1962, the communist Cuban government confiscated the San Carlos from Antonio Alberto Lazaro Mata.

35.     In or around 1984, the communist Cuban government abandoned and closed the San Carlos, which fell into disrepair.

36.     In 2005, Cuban state-run construction company Cimex began renovating the San Carlos. That work continued for more than a decade. The San Carlos was re-opened on January 14, 2018, as the Meliá San Carlos. Now, the San Carlos is operated by Meliá as a joint venture with the communist Cuban government.

37.     Vacation packages at the San Carlos can be reserved either directly from Meliá through its website, or through the Expedia or Booking.com Entities. Meliá, the Expedia Entities,

and the Booking.com Entities solicit and accept reservations from U.S. residents, including Florida residents.

38.     The Mata Family never has authorized any of the defendants to use or benefit from the use of the San Carlos, and the Mata Family has not received a penny for that use from Meliá, the Expedia Entities, the Booking.com Entities, or any other person or entity.

*The Hotel Jagua*

39.     In October of 1956, José López Vilaboy, together with his partner Asisclo Del Valle, formed a company named Fomento y Turismo de Cienfuegos, S.A. ("FTCSA").

40.     This company, which was owned by Vilaboy and Del Valle, purchased a property, which was previously owned by Del Valle's family. FTCSA quickly began construction of the hotel, which in time was to stand next to a casino to attract guests from Cuba, the U.S., and beyond.

41.     Due to construction delays, the hotel was not opened until December 28, 1959—almost one year after the communist revolution. The communist Cuban government confiscated FTCSA and the hotel in or around February 1960; thus the Vilaboy Family never was able to enjoy the fruits of their investment and labor—a modern hotel with nearly 140 rooms, a pool, a bar, a cabaret, and plans for a casino.

42.     Now, the Hotel Jagua is operated by Meliá as a joint venture with the communist Cuban government.

43.     Vacation packages at the Hotel Jagua can be reserved either directly from Meliá through its website, or through the Expedia or Booking.com Entities. Meliá, the Expedia Entities, and the Booking.com Entities solicit and accept reservations from U.S. residents, including Florida residents.

44.     The Vilaboy Family never has authorized any of the defendants to use or benefit from the use of the Hotel Jagua, and the Vilaboy Family has not received a penny for that use from Meliá, the Expedia Entities, the Booking.com Entities, or any other person or entity.

*The Hicacos Hotels*

45.     On the north coast of Cuba lies the Hicacos Peninsula, home to the most famous beach in Cuba, Varadero. Juan Bautista Cantero and his wife, Eugenia Herrera, owned property beginning at the easternmost tip of the peninsula and extending west for seven miles.

46.     In the early 1960s, the communist Cuban government confiscated the Canteros' property.

47.     Meliá, together with the communist Cuban government, has used and benefitted, and continues to use and benefit from the Cantero's property by building on it and operating at least nine hotels: Meliá Marina Varadero, Meliá Peninsula Varadero, Paradisus Princesa Del Mar Resort & Spa, Paradisus Varadero Resort & Spa, Meliá Marina Varadero Apartments, Meliá Las Americas, Meliá Varadero Hotel, Meliá Sol Palmeras, and Melia Las Antillas (the "Hicacos Hotels"). Now, the Hicacos Hotels are operated by Meliá as joint ventures with the communist Cuban government.

48.     Vacation packages at the Hicacos Hotels can be reserved either directly from Meliá through its website, or through the Expedia or Booking.com Entities. Meliá, the Expedia Entities, and the Booking.com Entities solicit and accept reservations from U.S. residents, including Florida residents.

49.     The Cantero Family never has authorized any of the defendants to use or benefit from the use of the Hicacos Hotels, and the Cantero Family has not received a penny for that use from Meliá, the Expedia Entities, the Booking.com Entities, or any other person or entity.

*The Cayo Coco Resorts*

50.     The Angulo Cuevas family owned Cayo Coco, an island off the North Coast of Cuba, near the city of Morón.

51.     On August 16, 1960, the communist Cuban government confiscated Cayo Coco from the Angulo Cuevas family. Gran Caribe, Cubanacán, and Gaviota, together with Meliá, developed a number of hotels on Cayo Coco, including the Meliá Jardines del Rey, Meliá Cayo Coco, Sol Cayo Coco, and Tryp Cayo Coco (the "Cayo Coco Resorts"). Now, the Cayo Coco Resorts are operated by Meliá as joint ventures with the communist Cuban government.

52.     Vacation packages at the Cayo Coco Resorts can be reserved either directly from Meliá through its website, or through the Expedia or Booking.com Entities. Meliá, the Expedia Entities, and the Booking.com Entities solicit and accept reservations from U.S. residents, including Florida residents.

53.     The Angulo Cuevas Family never has authorized any of the defendants to use or benefit from the use of the Cayo Coco Resorts, and the Angulo Cuevas Family has not received a penny for that use from Meliá, the Expedia Entities, the Booking.com Entities, or any other person or entity.

**B.      Succession Rights to the Properties**

54.     As of the time of the filing of this lawsuit, the Mata Heirs are the rightful owners of the San Carlos, which is being trafficked by Gran Caribe, Meliá, and the Expedia and Booking.com Entities.

55.     As of the time of the filing of this lawsuit, the Vilaboy Heir is the rightful owner of the Hotel Jagua, which is being trafficked by Gran Caribe, Meliá, and the Expedia and Booking.com Entities.

56.     At the time of the filing of this lawsuit, the Cantero Heirs are the rightful owners of the Hicacos Hotels, which are being trafficked by Cubanacán, Gaviota, Meliá, and the Expedia and Booking.com Entities.

57.     As of the time of the filing of this lawsuit, the Angulo Cuevas Heirs are the rightful owners of the Cayo Coco Resorts, which are being trafficked by Gran Caribe, Cubanacán, Gaviota, Meliá, and the Expedia and Booking.com Entities.

C.     *Defendants Have Trafficked the Properties Without Authorization and Without Compensating the Owners*

58.     The Owners never have given any sort of authorization to the defendants, and no defendant has ever paid—and the Owners never have received—any compensation whatsoever for the defendants' trafficking of the San Carlos, Hotel Jagua, Hicacos Hotels, or Cayo Coco Resorts.

59.     None of the Owners were eligible to file a claim with the Foreign Claims Settlement Commission under Title V of the International Claims Settlement Act of 1949 (22 U.S.C. § 1643, *et seq*.), because they were not U.S. citizens at the time their respective properties were confiscated.

60.     The San Carlos, Hotel Jagua, Hicacos Hotels, and Cayo Coco Resorts have not been the subject of a certified claim under Title V of the International Claims Settlement Act of 1949 (22 U.S.C. § 1643 *et seq*.).

D.     *The Joint Ventures*

61.     Defendants Gran Caribe, Cubanacán, and Gaviota operate with Meliá in joint ventures by which they receive, possess, obtain control of, manage, use, or otherwise acquire or hold an interest in confiscated property and engage in commercial activity involving the use of or

otherwise benefitting from confiscated property. Among these properties are the San Carlos, the Hotel Jagua, the Hicacos Hotels, and the Cayo Coco Resorts.

62.     Apart from the real property itself, defendants also trafficked, are trafficking, and are benefiting from trafficking, in the San Carlos' name, its good will, and the legacy built up by the Mata family.

63.     Defendants market, traffic, and benefit from not only the San Carlos' physical structure, but also its legacy, goodwill, and storied history—all the result of the Mata family's efforts over decades. Meliá's websites tout the facts that the San Carlos was "[o]pened in 1925" and served as "the city's main hotel throughout the first half of the 20th century."[9]

**E.      The Expedia Entities**

64.     Expedia is the corporate parent company for a number of brands, including the Expedia Entities. In fact, Expedia lists a total of 21 subsidiaries or affiliates, through which it maintains more than 200 travel booking sites across more than 70 countries, and through which it offers more than 1 million properties for rent.

---

[9] *See* http://www.meliacuba.com/cuba-hotels/hotel-melia-sancarlos



https://www.expediagroup.com/about/

65.   According to Expedia's most recent 10-K filing, the Expedia Entities "make

travel products and services available both on a stand-alone and package basis, primarily through

the following business models: the merchant model, the agency model and the advertising

model." Expedia Annual Report (Form 10-K) (Feb. 14, 2018) at 5.

> Under the merchant model, we facilitate the booking of hotel rooms, airline seats, car rentals and destination services from our travel suppliers and we are the merchant of record for such bookings. The majority of our merchant transactions relate to hotel bookings. Under the agency model, we facilitate travel bookings and act as the agent in the transaction, passing reservations booked by the traveler to the relevant travel provider. We receive commissions or ticketing fees from the travel supplier and/or traveler.
>
> *     *     *
>
> Under the advertising model, we offer travel and non-travel advertisers access to a potential source of incremental traffic and transactions through our various media and advertising offerings on Trivago and our transaction-based websites.

*Id*. at 5-6.

66.     When the Expedia Entities operate under the merchant model, customers "pay

[the Expedia Defendants] for merchant hotel transactions prior to departing on their trip,

generally when they book the reservation." *Id*. at F-10. As to how the Expedia Entities profit

from this model, they "generally contract in advance with lodging providers to obtain access to

rooms at negotiated rates" then re-sell the rooms to its customers at a profit. *Id*. at F-11.

67.     When the Expedia Entities operate under the agency model, the Expedia Entities

"act as the agent in the transaction, passing reservations booked by the traveler to the relevant

travel provider" and "receive commissions or ticketing fees from the travel supplier and/or

traveler." *Id*. at F-10.

68.     The Expedia Entities all provide online booking services for hotels in Cuba,

including those operated by Meliá. For example, the website Expedia.com lists a total of 3,711

properties available for rent throughout Cuba, including 23 Meliá properties. These properties

include the San Carlos, the Hotel Jagua, the Hicacos Hotels, and the Cayo Coco Resorts.

F.     *The Booking.com Entities*

69.     Booking Holdings is the corporate parent company for a number of brands, including Booking.com, Kayak, Priceline, Agoda, Rentalcars.com, and OpenTable. Booking Holdings Annual Report (Form 10-K) (Feb. 27, 2019) at 1.

70.     According to Booking Holdings, its "business is driven primarily by international results, which consist of the results of Booking.com, agoda, and Rentalcars.com and the international business of KAYAK and OpenTable." Booking Holdings Annual Report (Form 10-K) (Feb. 27, 2019) at 1. Booking Holdings clarifies, however, that its characterization of the majority of its business as "international" is "independent of where the consumer resides, where the consumer is physically located while using our services or the location of the travel service provider or restaurant. For example, a reservation made through Booking.com at a hotel in New York for a consumer in the United States is part of our international results." *Id*.

71.     The "substantial majority," or 89%, of Booking Holdings' "international" (by its own definition) business is generated by defendant Booking.com. Booking Holdings Annual Report (Form 10-K) (Feb. 27, 2019) at 1.

72.     The Booking.com Entities operate under both an agency model and a merchant model:

- Agency revenues are derived from travel-related transactions where we do not receive payments from travelers for the services provided. We invoice the travel service providers for our commissions after travel is completed. Agency revenues consist almost entirely of travel reservation commissions, as well as certain GDS reservation booking fees and certain travel insurance fees.

- Merchant revenues are derived from travel-related transactions where we receive payments from travelers for the service provided, generally at the time of booking. Merchant revenues include travel reservation commissions and transaction net revenues (i.e., the amount charged to travelers less the amount owed to travel service providers) in connection with our merchant reservation services; ancillary fees, including travel

> insurance-related revenues and certain GDS reservation booking fees; and credit card processing rebates and customer processing fees. Substantially all merchant revenues are for merchant services derived from transactions where travelers book accommodation reservations or rental car reservations from travel service providers.

Booking Holdings Annual Report (Form 10-K) (Feb. 27, 2019) at 2. Under these models, along with advertising through KAYAK, Booking Holdings had revenues of $14.5 billion. *Id.* at 2.

73.     "Booking.com is the world's leading brand for booking online accommodation reservations, based on room nights booked, with operations worldwide and headquarters in the Netherlands." Booking Holdings Annual Report (Form 10-K) (Feb. 27, 2019) at 4.

74.     Defendant Booking.com provides online booking services for hotels in Cuba, including those operated by Meliá. For example, Booking.com lists a total of 6,500 properties available for rent across Cuba, including 19 Meliá properties. These properties include the San Carlos, the Hotel Jagua, the Hicacos Hotels, and the Cayo Coco Resorts

## CLASS REPRESENTATION ALLEGATIONS

75.     Under Fed. R. Civ. P. 23, the Owners bring this suit and seek class certification of the claim alleged here and a damages judgment against defendants for themselves and on behalf of the Class.

76.     The Class is defined as follows and consists of:

All U.S. nationals (as defined at 22 U.S.C. § 6023(15)) who own property (as defined at 22 U.S.C. § 6023(12)) in Cuba that was confiscated by the government of Cuba prior to March 12, 1996, and has been trafficked by an agency or instrumentality of Cuba together with Meliá, in many instances with the assistance of the Expedia Entities or Booking.com Entities, without prior authorization of, or absent compensation to, such U.S. nationals, where such U.S. national was not eligible to file a claim with the Foreign Claims Settlement Commission under Title V of the International Claims Settlement Act of 1949 (22 U.S.C. § 1643 et seq.), and no certified claim to the property exists.

This class definition excludes (a) the defendants, their officers, directors, management, employees, subsidiaries, and affiliates; and (b) any judges or justices involved in this action and any members of their immediate families.

## A.   *Federal Rule of Civil Procedure 23(a)*

77.     Fed. R. Civ. P. 23(a) provides for class certification where the representative plaintiffs demonstrate that:

> 1.     the class is so numerous that joinder of all members is impracticable;
>
> 2.     there are questions of law or fact common to the class;
>
> 3.     their representative claims or defenses are typical of the claims or defenses of the class; and
>
> 4.     they will fairly and adequately protect the interests of the class.

### (1)   *Numerosity*

78.     On information and belief, the class consists of hundreds of persons. Meliá operates at least 34 hotels, resorts, and other tourist attractions in at least ten geographic regions in Cuba, rendering individual joinder of each class member impracticable.

### (2)   *Commonality*

79.     The Owners and the class have claims that raise common questions of law or fact.

80.     This is an action in which the Owners and the Class Members assert claims alleging the same theory of recovery, namely, that they are entitled to damages from each defendant for its wrongful trafficking of their property.

81.     The Owners' and Class Members' claims arise from the same practice or course of conduct: defendants' trafficking of confiscated properties used in the hospitality and tourism industry for their own economic gain.

82.     The Owners' and Class Members' damages were caused by the same practice or course of conduct: defendants' unlawful trafficking in their property without prior authorization or compensation to the rightful owners.

83.     The Owners' and Class Members' claims raise common questions of law or fact, including, but not limited to, whether:

     a.     The communist Cuban government nationalized, expropriated, confiscated, or seized property without providing the owners with adequate or effective compensation;

     b.     The confiscation of property occurred before March 12, 1996;

     c.     Defendants trafficked in that confiscated property; and

     d.     Defendants knew or had reason to know that the trafficked property had been confiscated.

*(3)     Typicality*

84.     The Owners' claims are typical of class member claims because they are based on the same legal theory, arise from a similar core set of facts, and are not subject to any unique defenses. Members of the class have sustained, and will continue to sustain, damages in the same manner as the Owners by reason of defendants' conduct.

*(4)     Adequacy of Representation*

85.     The Owners and their counsel will fairly and adequately protect and represent the interest of the Class Members.

86.     The Owners are members of the class defined above. As representative plaintiffs, they are committed to the active and vigorous prosecution of this action and have engaged competent counsel experienced in litigation of this nature, who possess the resources and commitment to vigorously prosecute this case to a successful resolution.

87.     There is no hostility of interests between the Owners and other Class Members. The Owners have no claims that are antagonistic to the claims of other Class Members and reasonably anticipate no difficulty in the management of this litigation as a class action.

**B.     *Federal Rule of Civil Procedure 23(b)***

88.     This class action is maintainable under Rule 23(b)(3).

*(1)     Predominance*

89.     In this case, common liability issues of law and fact predominate over any hypothetical or potential individualized issues, because the Owners' and Class Members' claims arise from a common nucleus of operative fact and share, among other things, the common issues of law and fact set forth above. The predominant common issue in this action is whether defendants knew or had reason to know that they trafficked, and are trafficking and benefitting from trafficking, in confiscated property.

*(2)     Superiority*

90.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation because it is the most manageable and efficient way to resolve the individual claims of each class member.

91.     Specifically, a class action will provide Class Members with what may be their only economically viable remedy. In addition, a class action will concentrate all litigation in one forum, which will conserve judicial and party resources with no unusual manageability problems.

**C.     *National Issues Class under Fed. R. Civ. P. 23(c)(4)***

92.     In the alternative, the Owners seek to bring and maintain an issues class under Fed. R. Civ. P. 23(c)(4).

93.     Rule 23(c)(4) provides that an action may be brought or maintained as a class action with respect to particular issues when doing so would materially advance the litigation as a whole.

94.     In order to materially advance this litigation, the Owners alternatively propose Class treatment to resolve several critical, class-wide issues, including whether:

    a.    defendants entered into a joint venture or other contractual arrangement that arranged for the use of confiscated property;

    b.    defendants engaged in a commercial activity using or otherwise benefitting from the use of confiscated property;

    c.    defendants sold, transferred, managed, used, or acquired an interest in confiscated property; and

    d.    defendants knew or had reason to know that the property they used or benefitted from was confiscated.

95.     This alternative Issues Class is properly alleged and may be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

    a.    Numerosity: Individual joinder of the Issues Class Members would be wholly impracticable. There are hundreds of United States citizens whose property was confiscated by the communist Cuban government and in which defendants traffic. Thus, the numerosity element for class certification is satisfied;

    b.    Commonality: Questions of law and fact are common to the Issues Class Members' claims. As this is an issues class under Rule 23(c)(4), there are, by definition, common questions of law applicable to all Class Members' claims:

    c.    Typicality: The Owners' claims are typical of Issues Class Members' claims because all the claims arise from the same course of conduct by defendants, i.e., defendants' trafficking in confiscated property. Therefore, the Owners' claims are typical of the issues Class Members' claims;

    d.    Adequacy: The Owners will fairly and adequately represent and protect the interests of the Issues Class Members. The Owners' interest in vindicating their claims is shared with all Issues Class Members, and there

are no conflicts between the named plaintiffs and putative Issues Class Members. Further, the Owners are represented by counsel who are competent and experienced in class action litigation and have no conflicts.

96.     This Issues Class also is maintainable under Rule 23(b)(3) because common liability issues of law and fact predominate over any hypothetical or potential individualized issues. The Owners' and Issues Class Members' claims arise from a common nucleus of operative fact and share, among other things, the common issues of law and fact set forth above. The predominant common issue in this action is whether defendants knew, or had reason to know, that they trafficked in, are trafficking in, or are benefitting from trafficking in confiscated property. A class action is superior to other available methods for the fair and efficient adjudication of this overarching issue, and this litigation, because class treatment affords the most manageable and efficient way to resolve the individual claims of each Issues Class Member. Class treatment will provide Issues Class Members with what may be their only economically viable remedy. In addition, a class action will concentrate all litigation in one forum, which will conserve judicial and party resources with no unusual manageability problems.

## <u>CAUSE OF ACTION</u>

### COUNT I
### <u>Private Right of Action Under 22 U.S.C. § 6082(a)(1)</u>
### Against All Defendants

97.     The Owners incorporate by reference paragraphs 1 to 96 as if fully set forth here.

98.     This claim is brought under Title III of the LIBERTAD Act, 22 U.S.C. § 6082.

99.     Defendants are "persons" as defined by 22 U.S.C. § 6023(11).

100.     The Owners and Class Members are the rightful owners of property that was confiscated by the communist Cuban government.

101.     Defendants Gran Caribe, Cubanacán, and Gaviota, entered into joint ventures with Meliá for the purpose of trafficking in confiscated properties for use as hotels or other hospitality venues, including the San Carlos, the Hotel Jagua, the Hicacos Hotels, and the Cayo Coco Resorts, which trafficking continues to this day, in violation of Title III of the LIBERTAD ACT.

102.     Defendants Expedia and Booking.com Entities also have used or benefitted from the confiscated properties by offering, for economic benefit, reservations at the San Carlos, the Hotel Jagua, the Hicacos Hotels, and the Cayo Coco Resorts, which trafficking continues to this day, in violation of Title III of the LIBERTAD ACT.

103.     On information and belief, officials of the Cuban government and its defendant instrumentalities, including Raúl Does 1-5 and Mariela Does 1-5 have, throughout the years, also participated in and profited from trafficking in confiscated properties, including the San Carlos, the Hotel Jagua, the Hicacos Hotels, and the Cayo Coco Resorts.

104.     Defendants Gran Caribe, Cubanacán, Gaviota, Raúl Does 1-5, and Mariela Does 1-5, together with Meliá and the Expedia and Booking.com Entities, have conducted this trafficking "without the authorization of any United States national who holds a claim to the property" (22 U.S.C. § 6023(13)) in violation of Title III of the LIBERTAD Act.

105.     Accordingly, the Owners and the Class Members are entitled to damages to be determined under 22 U.S.C. §§ 6082(a)(1)(A)(i) and 6082(a)(3)(C), along with attorneys' fees and costs under 22 U.S.C. § 6082(a)(1)(A)(ii).

106.     The Owners, in compliance with 22 U.S.C. §§ 6082 (a)(3)(B) and (a)(3)(D), provided notice to Meliá International, Meliá USA, Expedia, Hotels.com L.P., Hotels.com GP, Orbitz, Travelocity.com, Booking.com, and Booking Holdings more than 30 days before joining

those entities as defendants in this action. Notwithstanding this notice, those entities continue to traffic in the San Carlos, the Hotel Jagua, the Hicacos Hotels, and the Cayo Coco Resorts.

## PRAYER FOR RELIEF

WHEREFORE, the Owners, individually and on behalf of the Class Members, demand the following relief:

a)      A finding that this action satisfies the prerequisites for class treatment under Federal Rule of Civil Procedure 23(a) and (b)(3), or, alternatively, for maintenance of an Issues Class under Federal Rule of Civil Procedure 23(c)(4);

b)      Designation of the proposed Class Representative Owners as representatives of the Class and their undersigned counsel as Class Counsel; and

c)      A judgment against defendants that:

         i.      Awards actual damages in an amount to be determined under 22 U.S.C. § 6082(a)(1)(A)(i);

         ii.      Awards reasonable attorneys' fees and costs incurred in this action under 22 U.S.C. § 6082(a)(1)(A)(ii);

         iii.      Awards treble damages under 22 U.S.C. § 6082(a)(3)(C);

         iv.      Awards appropriate post-judgment interest; and

         v.      Grants all other relief that the Court deems just and proper.

## DEMAND FOR JURY TRIAL

The Owners demand trial by jury on all issues so triable.

Dated: September 11, 2019

Respectfully submitted,

**RIVERO MESTRE LLP**
2525 Ponce de Leon Blvd., Suite 1000
Coral Gables, Florida 33134
Telephone: (305) 445-2500
Facsimile: (305) 445-2505
E-mail: arivero@riveromestre.com
E-mail: jmestre@riveromestre.com
E-mail: arolnick@riveromestre.com

E-mail: crodriguez@riveromestre.com

By:    <u>s/ Andrés Rivero</u>
ANDRÉS RIVERO
Florida Bar No. 613819
JORGE A. MESTRE
Florida Bar No. 88145
ALAN H. ROLNICK
Florida Bar No. 715085
CARLOS A. RODRIGUEZ
Florida Bar No. 0091616

and

MANUEL VAZQUEZ
Florida Bar No. 132826
**MANUEL VAZQUEZ, P.A.**
2332 Galiano St., Second Floor
Coral Gables, Florida 33134
Telephone: (305) 445-2344
Facsimile: (305) 445-4404
E-mail: <u>mvaz@mvazlaw.com</u>

## **CERTIFICATE OF SERVICE**

I certify that on September 11, 2019, I electronically filed this document with the Clerk of the Court using CM/ECF. I also certify that this document is being served today on all counsel of record either by transmission of Noticed of Electronic Filing generated by CM/ECG or by U.S. Mail.

<u>s/ Andrés Rivero</u>
ANDRÉS RIVERO