## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 19-cv-22529-FAM

MARICELA MATA, BIBIANA
HERNANDEZ, and JOSE RAMON LÓPEZ
REGUEIRO, as individuals and
on behalf of all others similarly situated,

v.

EXPEDIA, INC., HOTELS.COM L.P.,
HOTELS.COM GP, LLC, ORBITZ, LLC,
TRAVELOCITY.COM, LP,
BOOKING.COM B.V., BOOKING
HOLDINGS INC.,

      Defendants.
_____/

**SECOND AMENDED CLASS ACTION COMPLAINT FOR DAMAGES**

On January 1, 1959, Fidel Castro and his fellow revolutionaries overthrew Fulgencio Batista's government and established a communist government in Cuba. The Cuban government then methodically stole all Cuban properties and private businesses from their rightful owners and transferred them to the state through systematic and massive property confiscations. The Cuban government stole properties from the Mata Family[1] and the Vilaboy Family[2] among others. Both families (collectively the "Owners") owned significant properties. The Mata Family owned a renowned hotel, the San Carlos, in Cienfuegos, which had been in operation since 1928. The Vilaboy Family, together with a partner, built another landmark hotel in Cienfuegos, the Hotel Jagua.

For nearly six decades since those confiscations, the Cuban government—and more recently, foreign and domestic companies, including Expedia, and Booking.com (and their affiliates)—have used, trafficked in, and benefitted from these confiscated properties without permission from, or compensation to, the properties' rightful owners.

Thus, the Owners, on behalf of themselves and a class of similarly situated persons, sue the defendants under the Cuban Liberty and Democratic Solidarity Act, 22 U.S.C. § 6021, *et seq.* (the "LIBERTAD Act") for trafficking in their confiscated properties in Cuba.

## THE PARTIES

1. Marisela Mata is a natural person and United States citizen who resides in Miami, Florida.

2. Bibiana Hernandez is a natural person and United States citizen who resides in Miami, Florida.

---

[1] Plaintiffs Maricela Mata and Bibiana Hernandez (the "Mata Heirs") are heirs to the San Carlos.
[2] Plaintiff Jose Ramon López Regueiro (the "Vilaboy Heir") is an heir to the Hotel Jagua.

2

3. Jose Ramon López Regueiro is a natural person and United States citizen who resides in Miami, Florida.

4. Defendant Expedia, Inc. ("Expedia") is a Delaware corporation with its principal place of business in Bellevue, Washington.

5. Defendant Hotels.com L.P., an affiliate of Expedia, is a Texas limited partnership with headquarters in Dallas, Texas.

6. Defendant Hotels.com GP, LLC, an affiliate of Expedia, is a Texas limited liability company with its headquarters in Bellevue Washington. Hotels.com GP, LLC is the general partner of Hotels.com L.P.

7. Defendant Orbitz, LLC ("Orbitz"), an affiliate of Expedia, is a Delaware limited liability company with its headquarters in Chicago, Illinois.

8. Defendant Travelocity.com LP ("Travelocity"), an affiliate of Expedia, is a Delaware limited partnership with its principal place of business in Southlake, Texas.[3]

9. Defendant Booking Holdings Inc. ("Booking Holdings") is a Delaware corporation with its principal place of business in Norwalk, Connecticut.

10. Defendant Booking.com B.V. ("Booking.com") is a Dutch limited liability company based in Amsterdam, the Netherlands, with its principal place of business in Amsterdam. Booking.com B.V. owns and operates Booking.com.[4]

---

[3] Defendants Expedia, Hotels.com L.P., Hotels.com GP, LLC, Orbitz, and Travelocity will be collectively referred to as the "Expedia Entities."

[4] Together, Booking Holdings Inc. and Booking.com B.V. will be referred to here as the "Booking.com Entities."

3

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the LIBERTAD Act (22 U.S.C. § 6082) and the amount in controversy exceeds $50,000, excluding interest, costs, and attorneys' fees.

13. The Court has personal jurisdiction over the Expedia and Booking.com Entities under Fla. Stat. §§ 48.193(1)(a)(1) and (6), because they maintain and carry on continuous and systematic contacts with Florida, regularly transact business within Florida, regularly avail themselves of the benefits of their presence in Florida, committed a tortious act within Florida, and caused injury within Florida by committing acts outside of Florida while engaging in solicitation within Florida.

14. Venue is proper in this District under 28 U.S.C. §§ 1391(b)(2) and (3).

## THE LIBERTAD ACT

15. Title III of the LIBERTAD Act provides U.S. nationals whose property in Cuba had been confiscated by the Cuban government with a right of action against those who traffic, and benefit from trafficking, in that property. 22 U.S.C. §§ 6081-6085.

## FACTUAL ALLEGATIONS

*A.* ***The Properties***

*The San Carlos*

16. In June 1928, Antonio Mata y Alvarez built and established the Hotel San Carlos located at Calle de San Carlos, No. 143, Cienfuegos, Cuba. He operated the San Carlos for nearly 32 years, building its reputation, such that it was regarded as the leading hotel in the historic center of Cienfuegos.

17. On December 4, 1962, the Cuban government confiscated the San Carlos from the Mata Family.

4

18. In or around 1984, the Cuban government abandoned and closed the San Carlos, which fell into disrepair.

19. In 2005, Cuban state-run construction company Cimex began renovating the San Carlos. That work continued for more than a decade. The San Carlos was re-opened on January 14, 2018, as the Meliá San Carlos.

20. At the time of filing of this case, vacation packages at the San Carlos could be reserved directly from the Expedia or Booking.com Entities, securing those reservations with a credit card. The Expedia Entities, and the Booking.com Entities solicit and accept reservations from U.S. residents, including Florida residents.[5]

*The Hotel Jagua*

21. In October of 1956, José López Vilaboy, together with his partner Asisclo Del Valle, formed a company named Fomento y Turismo de Cienfuegos, S.A. ("FTCSA").

22. FTCSA quickly began construction of the hotel, which in time was to stand next to a casino to attract guests from Cuba, the U.S., and beyond.

23. The Cuban government confiscated FTCSA and the hotel in or around February 1960; thus, the Vilaboy Family was never able to enjoy the fruits of their investment and labor— a modern hotel with nearly 140 rooms, a pool, a bar, a cabaret, and plans for a casino.

24. At the time of filing of this case, vacation packages at the Hotel Jagua could be reserved directly from the Expedia or Booking.com Entities, securing those reservations with a

---

[5] Between the date plaintiffs gave Expedia notice of their intent to add Expedia to this action on June 19, 2019, and the filing of this Second Amended Complaint, it appears that Expedia has removed the listing for the Hotel San Carlos from its website. Expedia has nonetheless trafficked in the Hotel San Carlos within the last two years. *See* 22 U.S.C. § 6084.

5

credit card. The Expedia Entities, and the Booking.com Entities solicit and accept reservations from U.S. residents, including Florida residents.[6]

B.     **Succession Rights to the Properties**

25.    Since its confiscation, and as of the time of the filing of this lawsuit, the Mata Family are the rightful owners of the claim to the San Carlos, which is being trafficked by the Expedia and Booking.com Entities.

26.    Since its confiscation, and as of the time of the filing of this lawsuit, the Vilaboy Family are the rightful owners of the claim to the Hotel Jagua, which is being trafficked by the Expedia and Booking.com Entities.

C.     **Defendants Have Trafficked the Properties Without Authorization and Without Compensating the Owners**

27.    The Owners never have given any sort of authorization to the defendants, and no defendant has ever paid—and the Owners never have received—any compensation whatsoever for the defendants' trafficking of the San Carlos and the Hotel Jagua.

28.    None of the Owners were eligible to file a claim with the Foreign Claims Settlement Commission under Title V of the International Claims Settlement Act of 1949 (22 U.S.C. § 1643, *et seq*.), because they were not U.S. citizens at the time their respective properties were confiscated.

29.    The San Carlos and the Hotel Jagua have not been the subject of a certified claim under Title V of the International Claims Settlement Act of 1949 (22 U.S.C. § 1643 *et seq*.).

D.     **The Expedia Entities**

---

[6] Between the date plaintiffs gave Expedia notice of their intent to add Expedia to this action on June 19, 2019, and the filing of this Second Amended Complaint, it appears that Expedia has removed the listing for the Hotel Jagua from its website. Expedia has nonetheless trafficked in the Hotel Jagua within the last two years. *See* 22 U.S.C. § 6084.

6

Case 1:19-cv-22529-CMA Document 52-1 Entered on FLSD Docket 12/06/2019 Page 7 of 19

30. Expedia is the corporate parent company for a number of brands. In fact, Expedia lists a total of 21 subsidiaries or affiliates, through which it maintains more than 200 travel booking sites across more than 70 countries, and through which it offers more than 1 million properties for rent.



https://www.expediagroup.com/about/

      31.     According to Expedia's most recent 10-K filing, the Expedia Entities "make travel products and services available both on a stand-alone and package basis, primarily through

8

the following business models: the merchant model, the agency model and the advertising model." Expedia Annual Report (Form 10-K) (Feb. 14, 2018) at 5.

> Under the merchant model, we facilitate the booking of hotel rooms, airline seats, car rentals and destination services from our travel suppliers and we are the merchant of record for such bookings. The majority of our merchant transactions relate to hotel bookings. Under the agency model, we facilitate travel bookings and act as the agent in the transaction, passing reservations booked by the traveler to the relevant travel provider. We receive commissions or ticketing fees from the travel supplier and/or traveler.
>
> \*   \*   \*
>
> Under the advertising model, we offer travel and non-travel advertisers access to a potential source of incremental traffic and transactions through our various media and advertising offerings on Trivago and our transaction-based websites.

*Id.* at 5-6.

32. When the Expedia Entities operate under the merchant model, customers "pay [the Expedia Defendants] for merchant hotel transactions prior to departing on their trip, generally when they book the reservation." *Id.* at F-10. As to how the Expedia Entities profit from this model, they "generally contract in advance with lodging providers to obtain access to rooms at negotiated rates" then re-sell the rooms to its customers at a profit. *Id.* at F-11.

33. When the Expedia Entities operate under the agency model, the Expedia Entities "act as the agent in the transaction, passing reservations booked by the traveler to the relevant travel provider" and "receive commissions or ticketing fees from the travel supplier and/or traveler." *Id.* at F-10.

34. The Expedia Entities all provide online booking services for hotels in Cuba, including those operated by Meliá. For example, the website Expedia.com has listed a total of 3,711 properties available for rent throughout Cuba, including 23 Meliá properties. These properties include the San Carlos and the Hotel Jagua.

9

### E. The Booking.com Entities

35. Booking Holdings is the corporate parent company for a number of brands, including Booking.com, Kayak, Priceline, Agoda, Rentalcars.com, and OpenTable. Booking Holdings Annual Report (Form 10-K) (Feb. 27, 2019) at 1.

36. According to Booking Holdings, its "business is driven primarily by international results, which consist of the results of Booking.com, agoda, and Rentalcars.com and the international business of KAYAK and OpenTable." Booking Holdings Annual Report (Form 10-K) (Feb. 27, 2019) at 1. Booking Holdings clarifies, however, that its characterization of the majority of its business as "international" is "independent of where the consumer resides, where the consumer is physically located while using our services or the location of the travel service provider or restaurant. For example, a reservation made through Booking.com at a hotel in New York for a consumer in the United States is part of our international results." *Id*.

37. The "substantial majority," or 89%, of Booking Holdings' "international" (by its own definition) business is generated by defendant Booking.com. Booking Holdings Annual Report (Form 10-K) (Feb. 27, 2019) at 1.

38. The Booking.com Entities operate under both an agency model and a merchant model:

- Agency revenues are derived from travel-related transactions where we do not receive payments from travelers for the services provided. We invoice the travel service providers for our commissions after travel is completed. Agency revenues consist almost entirely of travel reservation commissions, as well as certain GDS reservation booking fees and certain travel insurance fees.

- Merchant revenues are derived from travel-related transactions where we receive payments from travelers for the service provided, generally at the time of booking. Merchant revenues include travel reservation commissions and transaction net revenues (i.e., the amount charged to travelers less the amount owed to travel service providers) in connection with our merchant reservation services; ancillary fees, including travel

10

> insurance-related revenues and certain GDS reservation booking fees; and credit card processing rebates and customer processing fees. Substantially all merchant revenues are for merchant services derived from transactions where travelers book accommodation reservations or rental car reservations from travel service providers.

Booking Holdings Annual Report (Form 10-K) (Feb. 27, 2019) at 2. Under these models, along with advertising through KAYAK, Booking Holdings had revenues of $14.5 billion. *Id.* at 2.

39. "Booking.com is the world's leading brand for booking online accommodation reservations, based on room nights booked, with operations worldwide and headquarters in the Netherlands." Booking Holdings Annual Report (Form 10-K) (Feb. 27, 2019) at 4.

40. Defendant Booking.com provides online booking services for hotels in Cuba, including those operated by Meliá. For example, Booking.com has listed a total of 6,500 properties available for rent across Cuba, including 19 Meliá properties. These properties include the San Carlos the Hotel Jagua.

## CLASS REPRESENTATION ALLEGATIONS

41. Under Fed. R. Civ. P. 23, the Owners bring this suit and seek class certification of the claim alleged herein, and a damages judgment against defendants for themselves and on behalf of the Class.

42. The Class is defined as follows and consists of:

All U.S. nationals (as defined at 22 U.S.C. § 6023(15)) who own property (as defined at 22 U.S.C. § 6023(12)) in Cuba that was confiscated by the government of Cuba prior to March 12, 1996, and has been trafficked by an agency or instrumentality of Cuba together with Meliá, in many instances with the assistance of the Expedia Entities or Booking.com Entities, without prior authorization of, or absent compensation to, such U.S. nationals, where such U.S. national was not eligible to file a claim with the Foreign Claims Settlement Commission under Title V of the International Claims Settlement Act of 1949 (22 U.S.C. § 1643 et seq.), and no certified claim to the property exists.

11

> This class definition excludes (a) the defendants, their officers, directors, management, employees, subsidiaries, and affiliates; and (b) any judges or justices involved in this action and any members of their immediate families.

A. *Federal Rule of Civil Procedure 23(a)*

43. Fed. R. Civ. P. 23(a) provides for class certification where the representative plaintiffs demonstrate that:

> 1. the class is so numerous that joinder of all members is impracticable;
>
> 2. there are questions of law or fact common to the class;
>
> 3. their representative claims or defenses are typical of the claims or defenses of the class; and
>
> 4. they will fairly and adequately protect the interests of the class.

*(1) Numerosity*

44. On information and belief, the class consists of hundreds of persons. Meliá operates at least 34 hotels, resorts, and other tourist attractions in at least ten geographic regions in Cuba, rendering individual joinder of each class member impracticable.

*(2) Commonality*

45. The Owners and the class have claims that raise common questions of law or fact.

46. This is an action in which the Owners and the Class Members assert claims alleging the same theory of recovery, namely, that they are entitled to damages from each defendant for its wrongful trafficking of their property.

47. The Owners' and Class Members' claims arise from the same practice or course of conduct: defendants' trafficking of confiscated properties used in the hospitality and tourism industry for their own economic gain.

12

48. The Owners' and Class Members' damages were caused by the same practice or course of conduct: defendants' unlawful trafficking in their property without prior authorization or compensation to the rightful owners.

49. The Owners' and Class Members' claims raise common questions of law or fact, including, but not limited to, whether:

    a. The communist Cuban government nationalized, expropriated, confiscated, or seized property without providing the owners with adequate or effective compensation;

    b. The confiscation of property occurred before March 12, 1996;

    c. Defendants trafficked in that confiscated property; and

    d. Defendants knew or had reason to know that the trafficked property had been confiscated.

*(3) Typicality*

50. The Owners' claims are typical of class member claims because they are based on the same legal theory, arise from a similar core set of facts, and are not subject to any unique defenses. Members of the class have sustained, and will continue to sustain, damages in the same manner as the Owners by reason of defendants' conduct.

*(4) Adequacy of Representation*

51. The Owners and their counsel will fairly and adequately protect and represent the interest of the Class Members.

52. The Owners are members of the class defined above. As representative plaintiffs, they are committed to the active and vigorous prosecution of this action and have engaged competent counsel experienced in litigation of this nature, who possess the resources and commitment to vigorously prosecute this case to a successful resolution.

13

53. There is no hostility of interests between the Owners and other Class Members. The Owners have no claims that are antagonistic to the claims of other Class Members and reasonably anticipate no difficulty in the management of this litigation as a class action.

B.  *Federal Rule of Civil Procedure 23(b)*

54. This class action is maintainable under Rule 23(b)(3).

*(1)   Predominance*

55. In this case, common liability issues of law and fact predominate over any hypothetical or potential individualized issues, because the Owners' and Class Members' claims arise from a common nucleus of operative fact and share, among other things, the common issues of law and fact set forth above. The predominant common issue in this action is whether defendants knew or had reason to know that they trafficked, and are trafficking and benefitting from trafficking, in confiscated property.

*(2)   Superiority*

56. A class action is superior to other available methods for the fair and efficient adjudication of this litigation because it is the most manageable and efficient way to resolve the individual claims of each class member.

57. Specifically, a class action will provide Class Members with what may be their only economically viable remedy. In addition, a class action will concentrate all litigation in one forum, which will conserve judicial and party resources with no unusual manageability problems.

C.  *National Issues Class under Fed. R. Civ. P. 23(c)(4)*

58. In the alternative, the Owners seek to bring and maintain an issues class under Fed. R. Civ. P. 23(c)(4).

14

59. Rule 23(c)(4) provides that an action may be brought or maintained as a class action with respect to particular issues when doing so would materially advance the litigation as a whole.

60. In order to materially advance this litigation, the Owners alternatively propose Class treatment to resolve several critical, class-wide issues, including whether:

    a. defendants entered into a joint venture or other contractual arrangement that arranged for the use of confiscated property;

    b. defendants engaged in a commercial activity using or otherwise benefitting from the use of confiscated property;

    c. defendants sold, transferred, managed, used, or acquired an interest in confiscated property; and

    d. defendants knew or had reason to know that the property they used or benefitted from was confiscated.

61. This alternative Issues Class is properly alleged and may be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

    a. Numerosity: Individual joinder of the Issues Class Members would be wholly impracticable. There are hundreds of United States citizens whose property was confiscated by the communist Cuban government and in which defendants traffic. Thus, the numerosity element for class certification is satisfied;

    b. Commonality: Questions of law and fact are common to the Issues Class Members' claims. As this is an issues class under Rule 23(c)(4), there are, by definition, common questions of law applicable to all Class Members' claims:

    c. Typicality: The Owners' claims are typical of Issues Class Members' claims because all the claims arise from the same course of conduct by defendants, i.e., defendants' trafficking in confiscated property. Therefore, the Owners' claims are typical of the issues Class Members' claims;

    d. Adequacy: The Owners will fairly and adequately represent and protect the interests of the Issues Class Members. The Owners' interest in vindicating their claims is shared with all Issues Class Members, and there

15

Case 1:19-cv-22529-CMA Document 52 Entered on FLSD Docket 12/06/2019 Page 16 of 19

    are no conflicts between the named plaintiffs and putative Issues Class Members. Further, the Owners are represented by counsel who are competent and experienced in class action litigation and have no conflicts.

62. This Issues Class also is maintainable under Rule 23(b)(3) because common liability issues of law and fact predominate over any hypothetical or potential individualized issues. The Owners' and Issues Class Members' claims arise from a common nucleus of operative fact and share, among other things, the common issues of law and fact set forth above. The predominant common issue in this action is whether defendants knew, or had reason to know, that they trafficked in, are trafficking in, or are benefitting from trafficking in confiscated property. A class action is superior to other available methods for the fair and efficient adjudication of this overarching issue, and this litigation, because class treatment affords the most manageable and efficient way to resolve the individual claims of each Issues Class Member. Class treatment will provide Issues Class Members with what may be their only economically viable remedy. In addition, a class action will concentrate all litigation in one forum, which will conserve judicial and party resources with no unusual manageability problems.

## CAUSE OF ACTION

### Private Right of Action Under 22 U.S.C. § 6082(a)(1)
### Against All Defendants

63. The Owners incorporate by reference paragraphs 1 to 62 as if fully set forth here.

64. This claim is brought under Title III of the LIBERTAD Act, 22 U.S.C. § 6082.

65. Defendants are "persons" as defined by 22 U.S.C. § 6023(11).

66. The Owners and Class Members were the rightful owners of property that was confiscated by the Cuban government.

67. Since the date of confiscation, the Owners and the Class Members have owned a claim to the confiscated property.

68. Defendants Expedia and Booking.com Entities have knowingly and intentionally used or benefitted from the confiscated properties by offering, for economic benefit, reservations at the San Carlos and the Hotel Jagua, in violation of Title III of the LIBERTAD ACT.

69. Accordingly, the Owners and the Class Members are entitled to damages to be determined under 22 U.S.C. §§ 6082(a)(1)(A)(i) and 6082(a)(3)(C), along with attorneys' fees and costs under 22 U.S.C. § 6082(a)(1)(A)(ii).

70. The Owners, in compliance with 22 U.S.C. §§ 6082 (a)(3)(B) and (a)(3)(D), provided notice to Expedia, Hotels.com L.P., Hotels.com GP, LLC, Orbitz, Travelocity.com, Booking.com, and Booking Holdings more than 30 days before joining those entities as defendants in this action. Notwithstanding this notice, at the time this action was filed, those entities continued to traffic in the San Carlos and the Hotel Jagua.

## **PRAYER FOR RELIEF**

WHEREFORE, the Owners, individually and on behalf of the Class Members, demand the following relief:

a) A finding that this action satisfies the prerequisites for class treatment under Federal Rule of Civil Procedure 23(a) and (b)(3), or, alternatively, for maintenance of an Issues Class under Federal Rule of Civil Procedure 23(c)(4);

b) Designation of the Owners as representatives of the Class and their undersigned counsel as Class Counsel; and

c) A judgment against defendants that:

   i. Awards actual damages in an amount to be determined under 22 U.S.C. § 6082(a)(1)(A)(i);

   ii. Awards reasonable attorneys' fees and costs incurred in this action under 22 U.S.C. § 6082(a)(1)(A)(ii);

17

  iii. Awards treble damages under 22 U.S.C. § 6082(a)(3)(C);

  iv. Awards appropriate post-judgment interest; and

  v. Grants all other relief that the Court deems just and proper.

## DEMAND FOR JURY TRIAL

The Owners demand trial by jury on all issues so triable.

Dated: December 6, 2019

    Respectfully submitted,

    **RIVERO MESTRE LLP**
    2525 Ponce de Leon Blvd., Suite 1000
    Coral Gables, Florida 33134
    Telephone: (305) 445-2500
    Facsimile: (305) 445-2505
    E-mail: arivero@riveromestre.com
    E-mail: jmestre@riveromestre.com
    E-mail: arolnick@riveromestre.com
    E-mail: crodriguez@riveromestre.com

  By:  s/ Andrés Rivero
    ANDRÉS RIVERO
    Florida Bar No. 613819
    JORGE A. MESTRE
    Florida Bar No. 88145
    ALAN H. ROLNICK
    Florida Bar No. 715085
    CARLOS A. RODRIGUEZ
    Florida Bar No. 0091616

    and

    MANUEL VAZQUEZ
    Florida Bar No. 132826
    **MANUEL VAZQUEZ, P.A.**
    2332 Galiano St., Second Floor
    Coral Gables, Florida 33134
    Telephone: (305) 445-2344
    Facsimile: (305) 445-4404
    E-mail: mvaz@mvazlaw.com

  By: /s/ Manuel Vazquez

MANUEL VAZQUEZ

## **CERTIFICATE OF SERVICE**

I certify that on December 6, 2019, I electronically filed this document with the Clerk of the Court using CM/ECF. I also certify that this document is being served today on all counsel of record either by transmission of Noticed of Electronic Filing generated by CM/ECG or by U.S. Mail.

 <u>s/ Andrés Rivero</u><br>
ANDRÉS RIVERO